United States District Court
Southern District of Texas

**ENTERED**

December 18, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| LOS TAQUITOS BAR AND GRILL LLC | § | |
| d/b/a Los Taquitos and d/b/a Los Taquitos | § | CIVIL ACTION NO. 7:19-cv-00096 |
| Bar and Grill; MARIO GARZA, | § | |
| individually, and d/b/a Los Taquitos and | § | |
| d/b/a Los Taquitos Bar and Grill; and | § | |
| OLGA L. GARZA, individually, and d/b/a | § | |
| Los Taquitos and d/b/a Los Taquitos Bar | § | |
| and Grill, | § | |
| | § | |
| Defendants. | § | |

## <u>OPINION AND ORDER</u>

The Court now considers the cross-motions for summary judgment: "Plaintiff's Motion for Summary Judgment and Brief in Support,"[1] Defendants' response and motion to strike evidence,[2] and Plaintiff's reply;[3] and "Defendants' Motion for Summary Judgment"[4] and Plaintiff's response.[5] The Court also considers "Defendants' Motion for Leave to Extend Deadline to File Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment"[6] and Plaintiff's non-opposition.[7] After considering the motions, record, and relevant authorities, the Court **GRANTS** Defendants' motion for leave to file a late reply. The Court finds a genuine dispute of material fact and **DENIES** both parties' motions for summary judgment.

---

[1] Dkt. No. 27.
[2] Dkt. No. 31.
[3] Dkt. No. 33.
[4] Dkt. No. 30.
[5] Dkt. No. 32.
[6] Dkt. No. 34.
[7] Dkt. No. 35.

### I.   BACKGROUND AND PROCEDURAL HISTORY

This is an antipiracy case brought under the Federal Communications Act of 1934.[8]

Plaintiff J&J Sports Productions, Inc. is a California broadcast corporation[9] that alleges it had the

exclusive right to sublicense a certain closed-circuit telecast, the "April 9, 2016 Manny Pacquiao

v. Timothy Bradley Jr. WBO Welterweight Championship Fight Program, including all of the

undercard or preliminary bouts (collectively the 'Event')."[10] Plaintiff alleges that, on April 9,

2016, Defendants "willfully intercepted or received the interstate communication of the

Event"—which is "electronically coded or 'scrambled'" to prevent unauthorized interception—

or assisted in doing so without first contracting to obtain the rights to broadcast or exhibit the

Event.[11] Plaintiff alleges that Defendants exhibited the Event without authorization at their

restaurant "Los Taquitos and Los Taquitos Bar and Grill" in McAllen, Texas to Defendants'

patrons intending to "secure a commercial advantage and private financial gain."[12] Plaintiff

alleges Defendants violated "47 U.S.C. Section 605, or Section 553."[13]

Plaintiff timely filed its original complaint on March 24, 2019.[14] After numerous

continuances to account for the difficulty of conducting discovery during the COVID-19

pandemic,[15] discovery has closed and both parties believe they are entitled to summary judgment

and have timely filed motions.[16] The Court first turns to Defendants' motion to file their reply

brief one day late to ascertain what briefs are being considered on the motions for summary

judgment.

---

[8] 47 U.S.C. §§ 151–646.
[9] Dkt. No. 1 at 1, ¶ 1.
[10] *Id.* at 3, ¶ 7.
[11] *Id.* at 4, ¶¶ 10–11, 13.
[12] *Id.* at 5, ¶¶ 13–17.
[13] *Id.* ¶ 18.
[14] Dkt. No. 1; *see Prostar v. Massachi*, 239 F.3d 669, 671 (5th Cir. 2001) (per curiam) (holding that a 3-year statute of limitations applies to claims under the Communications Act).
[15] *See* Dkt. Nos. 20, 22, 24, 26, 29.
[16] Dkt. Nos. 26–27, 29–30.

## II. DEFENDANTS' MOTION FOR LEAVE TO EXTEND DEADLINE TO FILE REPLY

"Defendants seek leave to extend the deadline to file their reply brief in this cause by one day, from December 2, 2020 to December 3, 2020."[17] Defendants filed their motion for summary judgment on November 4, 2020.[18] Plaintiff timely responded pursuant to Local Rule 7.4.A on November 25, 2020.[19] Under Local Rule 7.4.E, Defendants' reply brief was due no later than December 2nd. Instead, on December 3rd, Defendants filed the instant motion seeking the Court's leave to file a late reply. Defendants' counsel explains in an affidavit that the power went out at his law office which caused counsel to lose work on the reply brief and have to restart the draft, which he was unable to complete before December 3rd.[20] In an amended certificate of consultation filed on December 4th, Plaintiff indicated it is unopposed to Defendants' requested extension.[21]

The Court evaluates extensions requested after the deadline has lapsed for excusable neglect.[22] "With regard to determining whether a party's neglect of a deadline is excusable, . . . the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."[23] Relevant factors include the danger of prejudice, "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in

---

[17] Dkt. No. 34 at 2, ¶ 3.
[18] Dkt. No. 30.
[19] Dkt. No. 32.
[20] Dkt. No. 34-1 at 1, ¶ 2.
[21] Dkt. No. 34.
[22] FED. R. CIV. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect.").
[23] *Pioneer Inv. Servs. v. Brunswick Assocs. LP*, 507 U.S. 380, 395 (1993).

good faith."[24] However, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."[25]

Courts around the country have recognized that power or internet outages are outside of counsels' control and generally warrant an extension of time[26] and this Court agrees. Furthermore, Defendants' requested relief is unopposed,[27] which the Court interprets as Plaintiff's non-opposition to Defendants' argument that their delay was justified, not prejudicial, and in good faith. The Court therefore **GRANTS** Defendants' motion for leave to extend the deadline.[28] The Court will treat Defendants' attached "Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment" and its exhibits as though they were timely filed.[29]

The Court now turns to the cross-motions for summary judgment.

### III. MOTIONS FOR SUMMARY JUDGMENT

#### a. Legal Standard

Federal Rule of Civil Procedure 56 provides that a court shall award summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] One principal purpose of summary judgment "is to isolate and dispose of

---

[24] *Id.*

[25] *Id.* at 392; *see Fine v. Evergreen Aviation Ground Logistics Enter., Inc.*, No. 2:07-CV-165, 2009 WL 793753, at *2 (E.D. Tex. Mar. 20, 2009) (citing *Pioneer Inv Servs.*, 507 U.S. at 392) ("Although the concept of excusable neglect is 'somewhat elastic,' it generally excludes gross carelessness, ignorance of the rules, or ignorance of the law.")

[26] *E.g.*, *Estate of Wash. v. Carter's Retail, Inc.*, No. 3:10-CV-1136-J-32TEM, 2011 WL 2731291, at *3 (M.D. Fla. July 13, 2011) (granting an extension of time because a party's counsel maintained "that, in addition to being busy, an internet outage beyond her control precipitated her failure to meet the filing deadline"); *Esparza v. Thill*, No. 06-1309-MLB, 2007 WL 4591236, at *3–4 (D. Kan. Dec. 31, 2007) (granting an extension of time because of ice and snow-caused power outages).

[27] Dkt. No. 35.

[28] Dkt. No. 34.

[29] Dkt. No. 34-2.

[30] FED. R. CIV. P. 56(a); *see Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 624 (5th Cir. 2006).

factually unsupported claims or defenses" and should be interpreted to accomplish this purpose.[31]

To earn summary judgment, the movant must demonstrate that there are no disputes over genuine and material facts and that the movant is entitled to summary judgment as a matter of law.[32] "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."[33] The movant "bears the initial burden of . . . demonstrat[ing] the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[34] In other words, a movant may satisfy its burden by pointing out the absence of evidence to support the nonmovant's case if the nonmovant would bear the burden of proof with respect to that element at trial.[35] To demonstrate the absence of a genuine dispute of material fact, the movant must point to competent evidence in the record, such as documents, affidavits, and deposition testimony[36] and must "articulate precisely how this evidence supports his claim,"[37] to "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[38] If the movant fails to meet its initial burden, the motions for

---

[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[32] *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).

[33] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986), *quoted in Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *accord Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (holding that, if the movant intends to rely on an affirmative defense, "it must establish beyond dispute all of the defense's essential elements").

[34] *Lynch Props. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).

[35] *Celotex Corp.*, 477 U.S. at 325; *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial.").

[36] FED. R. CIV. P. 56(c)(1); *see Pioneer Expl.*, 767 F.3d at 511 (quotation omitted) ("The movant . . . must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.").

[37] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[38] *Celotex Corp.*, 477 U.S. at 322 (quoting FED. R. CIV. P. 56(c)).

summary judgment "must be denied, regardless of the nonmovant's response."[39] Accordingly, the Court may not enter summary judgment by default,[40] but may accept a movant's facts as undisputed if they are unopposed.[41]

If the movant meets its initial burden, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts" that demonstrate the existence of a genuine issue for trial.[42] The nonmovant's demonstration cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation"[43] and a "mere scintilla of evidence" also will not do.[44] Even if the nonmovant produces more than a scintilla of evidence in its favor, such evidence may be "so overwhelmed by contrary proof" that summary judgment is still proper in favor of the movant.[45] The Court does not need to "credit evidence that is 'blatantly contradicted by the record,' especially by video or photographic evidence."[46] "[T]he nonmoving party must adduce evidence sufficient to support a jury verdict."[47] Neither self-serving allegations nor conclusory affidavits can defeat a motion for summary judgment

[39] *Pioneer Expl.*, 767 F.3d at 511 (quotation omitted).
[40] *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).
[41] *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988); *see* LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition").
[42] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) ("[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991) ("[T]he party responding to a summary judgment motion must support her response with specific, non-conclusory affidavits or other competent summary judgment evidence.").
[43] *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[44] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *accord Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019).
[45] *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (quoting *Neely v. Delta Brick and Tile Co.*, 817 F.2d 1224, 1226 (5th Cir. 1987)), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000).
[46] *Malbrough v. Stelly*, 814 F. App'x 798, 804 (5th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).
[47] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

supported by probative evidence.[48] The Court will countenance only reasonable inferences in the nonmovant's favor and will not indulge "senseless" theories or leaps in logic.[49] The nonmovant is "*required* to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[50] "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists."[51] Courts "will not assume 'in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts,' and will grant summary judgment 'in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"[52] The Court is under no duty to sift through the entire record in search of evidence to support the nonmovant's opposition to summary judgment.[53]

"A fact is 'material' if its resolution could affect the outcome of the action,"[54] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[55] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[56] "Although this is an

---

[48] *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018); *see Cadena v. El Paso County*, 946 F.3d 717, 725 (5th Cir. 2020) ("[A]ffidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.").

[49] *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 468–69 & n.14 (1992).

[50] *Ragas*, 136 F.3d at 458 (emphasis added).

[51] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *see Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quotation and alteration omitted) ("When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case.").

[52] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

[53] *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *accord Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 380 n.2 (5th Cir. 2011).

[54] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).

[55] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006); *see Bache v. Am. Tel. & Tel. Co.*, 840 F.2d 283, 287 (5th Cir. 1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) ("[T]o determine if an issue of material fact is genuine, we must then decide whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'").

[56] *Anderson*, 477 U.S. at 248.

exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[57] The Court does not weigh the evidence or evaluate the credibility of witnesses and views all facts and inferences in the light most favorable to the nonmovant,[58] including "resolv[ing] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[59]

### b. Analysis

Defendants argue that there is no evidence that Plaintiff's Event was shown at Defendants' Los Taquitos restaurant on April 9, 2016.[60] Plaintiff responds that its auditor entered the restaurant and positively identified Plaintiff's Event being shown on one of the restaurant televisions.[61] Defendants argue that the evidence shows the restaurant was closed.[62]

Plaintiff brings its claim pursuant to 47 U.S.C. § 553 or alternatively § 605.[63] Section 553 provides, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."[64] Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."[65] Both sections are intended to provide for remedies and penalties to "protect the revenue of television cable companies from unauthorized reception

---

[57] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).
[58] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).
[59] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).
[60] Dkt. No. 30 at 4–5, ¶¶ 8–9.
[61] Dkt. No. 32 at 6–7, ¶¶ 8–9; *id.* at 9–10, ¶¶ 12–13; *accord* Dkt. No. 33 at 5, ¶¶ 5–6.
[62] Dkt. No. 34-2 at 4, § B.
[63] Dkt. No. 1 at 5, ¶ 18.
[64] 47 U.S.C. § 553(a)(1).
[65] *Id.* § 605(a).

of their transmissions."[66] "To prevail under either statute, Plaintiff need only show (1) that the Event was shown in Defendants' Establishment, (2) that the Event was shown without authorization by Plaintiff, and (3) that Plaintiff was the exclusive licensee."[67] These are strict liability statutes.[68] There is no good faith defense and Defendant's intent is irrelevant except with respect to enhanced damages.[69]

At issue is the first element, whether the Event was actually shown in Defendants' restaurant. Plaintiff argues that its auditor, a member of the public, testified that he entered Defendant's restaurant and identified Plaintiff's Event.[70] Plaintiff's auditor, Matthew Schlieper, averred in his affidavit that he entered the Los Taquitos restaurant at 8:35 p.m. on April 9, 2016 and observed one of the undercard or preliminary bouts of Plaintiff's Event being displayed on one of the televisions inside.[71] Plaintiff's evidence also includes two videos taken from outside Los Taquitos, looking into the building window, and some kind of fighting or boxing match is visible in the videos being displayed on a screen inside the restaurant.[72] However, Matthew Schlieper admitted in his deposition that he could not tell who the fighters were at the time of recording the videos outside or from later reviewing the videos (neither can the Court), and that

---

[66] *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001) (quoting *Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 961 (N.D. Ill. 2000)); *see also* H.R. REP. NO. 98-934, at 83, *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720 ("The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry—the theft of cable service. . . . Theft of service is depriving the cable industry of millions of dollars of revenue each year which it should otherwise be receiving.").

[67] *G&G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, No. 6:12-cv-3052, 2014 U.S. Dist. LEXIS 5416, at *9 (W.D. La. Jan. 14, 2014) (quotation omitted) (collecting cases); *cf. G&G Closed-Circuit Events, LLC v. 10 De Mayo Mexican Grill & Bar LLC*, No. 1:14-cv-31, 2014 U.S. Dist. LEXIS 190633, at *14 (E.D. Tex. Dec. 17, 2014) (citing 47 U.S.C. § 605(a)) ("Plaintiff must establish that Defendants (1) received, assisted in receiving, transmitted, or assisted in transmitting an interstate communication by radio and (2) broadcast, displayed, or divulged that communication to (3) at least one other person (4) without authorization.").

[68] *See J&J Sports Prods. v. Little Napoli, Inc.*, No. H-13-1237, 2014 WL 3667903, at *2, 2014 U.S. Dist. LEXIS 99032, at *5 (S.D. Tex. July 22, 2014) (Miller, J.).

[69] *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08 CV 1259, 2009 WL 1767579, at *4, 2009 U.S. Dist. LEXIS 52517, at *12 (N.D. Ohio June 22, 2009) (collecting cases).

[70] Dkt. No. 33 at 5, ¶ 6.

[71] Dkt. No. 27-1 at 21; *see* Dkt. No. 27-1 at 6, ¶ 3 (one of the undercard bouts was Manny Perez versus Jose Ramirez, which is what Matthew Schlieper witnessed).

[72] Dkt. No. 27-1 at 46 (citing https://youtu.be/flCpJU3apHc & https://youtu.be/rJflGXqQrA8).

he did not identify the fighters "until [he] walk[ed] into the building."[73] Mr. Schlieper could not

recall why he did not film inside the restaurant.[74] The videos do not clearly indicate that patrons

or customers are inside the restaurant; the individuals visible inside the restaurant are all standing

or walking and appear to be wearing uniforms instead of ordinary clothing. Mr. Schlieper

testified that the two standing individuals appear to be waitstaff, not customers.[75]

In contrast, Defendants argue the restaurant was closed.[76] Defendants' restaurant

operator, Efrain Banuelos, averred in his affidavit:

> On April 9, 2016, Los Taquitos closed its dining area early. The landlord of the
> suite where I operated Los Taquitos did not allow me or anyone else in that
> commercial plaza to open our diners to the public when big boxing or UFC fights
> were happening because only Easy Eights, a bar in that commercial plaza, could
> show the fights to the public, and we could not take customers from them, so-to
> speak. We were only allowed to sell food to the people at Easy Eights, since the
> bar did not sell food. We could send our waiters to the bar with a menu, and
> people could order food from the restaurant, and the waiters would take them the
> food to the bar. But the restaurant could not have people inside the restaurant's
> diner.[77]

Efrain Banuelos's averments are corroborated in part by online Yelp reviews for "Easy Eight's

Billiards and Sports Bar," in which multiple patrons' reviews describe that Easy Eight's showed

fights and permitted patrons to bring in food from elsewhere.[78]

Plaintiff counters that its corporate representative was able to identify that the broadcast

at issue was from an "HBO pay-per-view fee[d]" and that the broadcast had "HBO pay-per-view

markings on the television screens."[79] Even accepting these details as established by the

evidence, Plaintiff's corporate representative also testified that he did not verify whether

Matthew Schlieper entered Los Taquitos on April 9, 2016, or whether Mr. Schlieper actually

---

[73] *Id.* at 58, 40:1–41:9.
[74] *Id.* at 60, 46:2–20.
[75] *Id.* at 58, 39:11–21.
[76] Dkt. No. 34-2 at 4–5.
[77] *Id.* at 20, ¶ 3.
[78] *Id.* at 22–24.
[79] Dkt. No. 32 at 10–11, ¶¶ 12–14.

witnessed Plaintiff's Event.[80] The HBO pay-per-view markings do not demonstrate that Plaintiff's Event was shown.

In short, the parties have established a genuine dispute of material fact: whether Defendants' restaurant Los Taquitos was open on the night of April 9, 2016, and whether Plaintiff's investigator Matthew Schlieper actually entered and witnessed Plaintiff's Event being shown on the restaurant television. The Court cannot make a credibility determination to select between directly conflicting views on the matter.[81] "Accordingly, the Court **DENIES** [the motions] for summary judgment because there is a fact issue on whether the Event was actually broadcast by Defendant[s]."[82]

## IV. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **DENIES** both parties' motions for summary judgment.[83]

IT IS SO ORDERED.

DONE at McAllen, Texas, this 18th day of December 2020.

_____
Micaela Alvarez
United States District Judge

---

[80] Dkt. No. 27-1 at 87, 62:22–64:19.
[81] *See supra* note 58.
[82] *J&J Sports Prods., Inc. v. Saenz*, No. 7:15-cv-254, 2016 WL 3198161, at *4 (S.D. Tex. June 9, 2016) (Alvarez, J.).
[83] Dkt. Nos. 27, 30.